# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### LEWIS T. BABCOCK, JUDGE

Civil Case No. 07-cv-01595-LTB

RONALD J. KIRBY,

       Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____

## MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

       Plaintiff, Ronald J. Kirby, appeals the final decision of Michael J. Astrue, Commissioner of Social Security, denying his application for Social Security Disability benefits and Supplemental Security Income benefits. Following an October 3, 2006, hearing, Administrative Law Judge ("ALJ") William Musseman issued an unfavorable decision on December 6, 2006. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thus making it the Commissioner's final decision. Plaintiff has exhausted his administrative remedies and this case is ripe for judicial review. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist the determination of this appeal. After consideration of the parties' briefs and the administrative record, and for the reasons set forth below, I REVERSE and REMAND.

# I. BACKGROUND

Plaintiff was born on August 5, 1969, and was thirty-seven years of age at the time of the hearing. [Administrative Record "AR" 46]. He has a college education and additional training in aviation and electronics. [AR 79]. His past work history includes employment in a pizza parlor and as a customer service representative. [AR 127]. Plaintiff claims he is disabled due to back and leg pain resulting from herniated discs in his lower back. [AR 73]. Plaintiff's alleged onset date is December 28, 2004, the last date he worked. [AR 73].

## A. Plaintiff's Medical History

Plaintiff reports a lumbar injury arising due to a fall he suffered at work on December 28, 2004, while attempting to sit down in his chair. [AR 128]. An MRI revealed degenerative disc disease and disc herniation at L5-S1, and mild to moderate degenerative facet disease at L3–4, L4–5, and L5–S1. [AR 131]. He was prescribed Percocet. [AR 129]. Plaintiff followed up with Concentra Medical Centers on January 5, 2005, and was diagnosed with lumbar contusion and lumbar strain. [AR 283]. Plaintiff was prescribed physical therapy. [AR 283]. An EMG/NCV study showed evidence consistent with L5–S1 radiculopathy. [AR 11]. Plaintiff was given a epidural steroid injection on February 10, 2005, but reported little improvement. [AR 139].

Plaintiff was referred to orthopedic surgeon Dr. Sung who recommended additional injections and physical therapy prior to considering surgery. [AR 133–35]. Dr. Sung diagnosed L4–S1 disc degeneration with facet arthritis, L4–5 spinal stenosis, and mild right L3–4 facet osteoarthritis. [AR 134]. In March 2005, Plaintiff saw Dr. Murk who also recommended physical therapy and found "no issues of neurosurgical concern." [AR 145]. Plaintiff was then

referred to Dr. Bhatti who recommended lumbar decompression. [AR 147]. In April 2005, a thoracic MRI showed mild degenerative disease from T6–7 through T11–12 with small Schmorl's nodes and no other abnormalities. [AR 150].

In June 2005, Plaintiff saw Dr. Hattem who recommended pool therapy. [AR 186]. Dr. Hattem stated he planned to return Plaintiff to four hours of sedentary work per day, but Plaintiff requested he be placed off duty because of his medications. [AR 186]. On July 21, 2005, Dr. Hattem stated Plaintiff was at maximum medical improvement. [AR 154]. Dr. Hattem found Plaintiff to have a 6% whole person impairment. [AR 155]. Dr. Hattem recommended Plaintiff not work beyond a sedentary level and be allowed to stand and stretch as necessary. [AR 155].

On July 20, 2005, Plaintiff saw Dr. Baer who stated Plaintiff was at maximum medical improvement. [AR 164]. Plaintiff told Dr. Baer he could not go to work because of his medications, and was told by Dr. Baer that he should stop taking the medications and return to work. [AR 164]. Plaintiff became upset with Dr. Baer and informed Dr. Baer that he would rather continue taking the medication. [AR 164]. Dr. Baer told Plaintiff he would probably never be pain free. [AR 164].

Plaintiff had a cervical MRI on February 27, 2006, that revealed moderate degenerative changes of the C5–6 disc space, with osteophyte formation, but no cord impingement or compression, and minimal degenerative changes of the C6–7 disc space. [AR 323–24].

In March 2006, Plaintiff was referred to pain specialist Dr. Benecke who prescribed additional narcotic pain medication. [AR 328–37]. Dr. Benecke stated Plaintiff was relegated to minimal ambulation for any distance and recommended a motorized wheelchair. [AR 332]. Dr. Benecke noted there was no likelihood of significant improvement occurring. [AR 332]. Dr.

Benecke found Plaintiff's lower extremities to have good strength and intact sensation and reflexes, and found no evidence of cord injury. [AR 330]. In a letter regarding Plaintiff dated August 22, 2006, Dr. Benecke stated: "The individual [Plaintiff] could certainly engage in some sedentary activity, though I do not anticipate that he would be able to do it for an extended period of time. He would need frequent breaks and the ability to change position as is directed by his symptoms. Furthermore, he is on long term use of opioids and I do not foresee that to change in foreseeable future." [AR 328].

Plaintiff's primary care physician, Dr. Miller, opined on August 9, 2006, that Plaintiff was unable to work due to the side effects of his narcotic medications. [AR 315]. Dr. Miller stated Plaintiff's "physical limitations do not allow him to bend, kneel, [or] sit for prolonged periods of time. [Plaintiff] can do no lifting of any sort on a consistent basis. Cognitively, he has difficulties completing simple tasks, and has limitations with short-term memory. The combination of physical and cognitive limitations will not allow him to return to gainful employment." [AR 315]. In a letter dated January 23, 2007, and submitted to the appeals counsel, Dr. Miller stated that—based on objective examination of Plaintiff that revealed degenerative disc disease, nerve impingement, spinal stenosis, and absence of ankle jerk reflex—he believed Plaintiff's complaints to be credible. [AR 13]. Dr. Miller noted Plaintiff's "[c]ognitive functions such as problem solving and concentration are limited by a combination of his chronic pain and the narcotic analgesics." [AR 14]. Dr. Miller stated: "I believe [Plaintiff's] limitations are significant and his ability to perform work-related functions are significant and his ability to perform work-related functions either now or in the future is not realizable." [AR 14].

In April 2006, rehabilitation counselor Martin Rauer completed a vocational assessment of Plaintiff. [AR 109–26]. Mr. Rauer concluded—due to Plaintiff's "extreme limitations in physical and cognitive functioning"—it was "virtually impossible" for Plaintiff to "perform competitive work on a reliable basis." [AR 123].

In October 2005, Plaintiff was examined by a state medical examiner who found Plaintiff could lift twenty pounds occasionally, could lift ten pounds frequently, could stand or walk at least two hours in an eight hour workday, could sit about six hours in an eight hour workday, could engage in unlimited pushing and pulling, could occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, could never climb ladders, and otherwise had no limitations. [AR 306–13]. The examiner found Plaintiff's allegations of impairment to be "partially credible." [AR 311].

## B. Disability Hearing

At Plaintiff's hearing on October 3, 2006, Plaintiff testified regarding his chronic pain, vascular condition, physical limitations, medications, and side effects from the medications. [AR 346–59]. Plaintiff testified he was taking numerous medications, including Fentanyl, Dilaudid, Aciphex, Welbutrin, Provigil, Topamax, Comudin, and Celebrex. [AR 347–48]. Plaintiff testified his medication caused problems with memory—including remembering to take his medication and remembering things on his schedule—and caused him to be tired. [AR 346–48]. Plaintiff testified his medications caused cognitive difficulties that caused him to sometimes pay the same bill four or five times in one month. [AR 347]. Plaintiff said he could sit for approximately one hour, stand for approximately ten to fifteen minutes, or walk for about half a block, at which point the blood pooling in his legs causes his legs to swell and requires

him to elevate his legs so the blood can drain out. [AR 348–49]. Plaintiff testified he needed to do this about ten times per day, and spends about 85 to 90 percent of each day lying down. [AR 349]. Plaintiff testified he could lift his eight pound dog twice per day and he was unable to bend. [AR 350]. Plaintiff testified his condition had worsened in the six months preceding the hearing and that his pain medications had been increased in that time. [AR 350]. Plaintiff testified he had considered the use of a morphine pump but felt the negatives outweighed the positives. [AR 351]. Plaintiff testified he had one or two "good days" per week and that he could do light housekeeping about once per week. [AR 351]. Plaintiff testified that he occasionally needs help getting into or out of the shower. [AR 352–53]. Plaintiff testified he was told by his doctors that he could not drive while taking his opiate medications and that he uses a cane when he walks. [AR 355].

The ALJ then briefly questioned a vocational expert. The vocational expert testified that employers generally only allow two absences per month and no jobs allow an employee to elevate their legs and lay down periodically during the day. [AR 360].

## C. ALJ Ruling

In his ruling, the ALJ applied the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520. Applying the first step, the ALJ determined Plaintiff had not performed substantial gainful activity since his onset date of December 28, 2004. [AR 20]. Applying the second step, the ALJ determined Plaintiff had a severe combination of impairments including degenerative disc disease of the lumbar and thoracic spine, obesity, and vascular impairment. [AR 20–21]. The ALJ determined Plaintiff did not have a severe mental impairment or affective disorder. [AR 21]. Applying the third step, the ALJ determined Plaintiff did not have an

impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 24]. Applying the fourth step, the ALJ determined Plaintiff was able to perform past relevant work as a customer service representative. [AR 25]. As the ALJ found Plaintiff was not disabled at step four, it was unnecessary to proceed to step five: determining whether the claimant was able to perform other work that exists in significant numbers in the national economy. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) ("If at any point in the process the Secretary finds that a person is disabled or not disabled, the review ends.").

In reaching his conclusion at step four, the ALJ determined Plaintiff had the residual functional capacity to perform a full range of sedentary work. [AR 21]. In making this finding, the ALJ considered both the medical evidence and Plaintiff's testimony. The ALJ found that the medical records failed to provide any objective support for the degree of limitation alleged. [AR 22]. The ALJ stated: "While the claimant reports the existence of severe side effects [due to his medications], he failed to identify any such side effects to his physicians during his examinations." [AR 23]. The ALJ found the record did not support Plaintiff's claims of deteriorated functioning. [AR 23]. The ALJ stated: "The claimant has been non-compliant with recommended treatment, including physical therapy, has expressed no interest in additional epidural steroid injections although this had provided some symptom relief in the past, and has demonstrated positive Waddell's signs on examination. Moreover, in February 2005, treatment notes indicate that the claimant was not working because he chose not to work." [AR 23]. The ALJ concluded: "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the

alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [AR 23–24].

The ALJ gave little weight to the opinions of Plaintiff's treating physicians. As to Dr. Benecke, the ALJ found his medical conclusions to "be based largely on the claimant's subjective complaints . . . and . . . not directly related to any objective findings." [AR 24]. The ALJ also accorded little weight to the opinions of Dr. Miller because such opinions were "based largely on the claimant's reports, as opposed to objective evidence" and because "the undersigned finds the claimant's subjective complaints to be not entirely credible." [AR 24–25]. The ALJ gave no weight to the opinions of Mr. Rauer because such opinions were also apparently based on Plaintiff's subjective complaints. [AR 25]. The ALJ found the state examiner's opinion should be "given some weight, to the extent it is consistent with the evidence of record as a whole." [AR 25].

Accordingly, the ALJ found Plaintiff had not been under a disability as defined in the Social Security Act from December 28, 2004, through the date of the decision on December 6, 2006. [AR 26].

## II. STANDARD OF REVIEW

My review in a Social Security appeal is limited to whether the final decision is supported by substantial evidence and the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Although I do not reweigh the evidence or try the issues *de novo*, I must examine the record as a whole—including anything that may undercut or detract from the ALJ's findings—in order to determine if the substantiality test has been met. *Id.* at 1262. Evidence is substantial if it amounts to "more than a scintilla, but less than a preponderance; it is

such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). Evidence is not substantial if it is overwhelmed by other evidence in the record, or constitutes a mere conclusion. *See Grogan*, 399 F.3d at 1261–62. If the ALJ's decision is not supported by substantial evidence, or if the ALJ failed to provide a sufficiently clear basis from which I may determine the appropriate legal standards were applied, I may reverse or remand. *See Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994).

## III. ISSUES RAISED

Plaintiff raises two issues on appeal: (1) the ALJ failed to properly evaluate Plaintiff's subjective complaints, and (2) the ALJ improperly rejected the opinions of Drs. Benecke and Miller. I address each in turn.

## IV. WHETHER THE ALJ ERRED IN FAILING TO PROPERLY EVALUATE PLAINTIFF'S SUBJECTIVE COMPLAINTS

When considering what weight is to be given to a claimant's subjective complaints, the ALJ must initially inquire whether the claimant had a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *See* 20 C.F.R. § 404.1529. The ALJ found Plaintiff had such medically determinable impairments. [AR 23].

Once such inquiry has been made, the ALJ must then evaluate the intensity and persistence of the symptoms in order to determine how the symptoms limit the capacity for work. *See id.* Such an inquiry "requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *1 ("SSR 96-7p").

A.  Factors the ALJ must consider when making a credibility determination

"In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record.  An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."  SSR 96-7p, 1996 WL 374186, at *1.  "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  *Id.* at *4.

The ALJ must consider all of the available evidence, including the claimant's subjective complaints.  *See id.* at *2–3.  He should give "careful consideration" to the "location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness and side effects of any medication; treatment, other than medication, for pain relief; and the claimant's daily activities."  *Hamby v. Astrue*, 260 F. App'x 108, 113 (10th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)) (internal formatting omitted).  The ALJ should consider the degree to which the claimant's statements are consistent with the medical signs, laboratory findings, and medical history, and the degree to which the claimant's statements made in connection with his disability claim are consistent with the statements made to medical providers.  *See* SSR 96-7p, 1996 WL 374186, at *5–6.

The ALJ should also take into consideration whether manifestations of the complained-of symptoms have been observed by the claimant's physicians or others.  *See id.*  In so doing, the ALJ must consider the claimant's entire medical treatment history:

In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

*Id*. at *7. On the other hand:

the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*Id*. The ALJ should consider whether the claimant was able to afford the recommended treatment, and whether the claimant had "been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual." *Id*. at *8.

> B.  The ALJ did not base his credibility determination on substantial evidence

When considering Plaintiff's subjective complaints, the ALJ reviewed the medical record and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his pain were not credible. When the ALJ makes a credibility determination—as the ALJ did here—such a determination will not be overturned on review so long as it is based on substantial evidence and correct legal standards. *See Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d

774, 777 (10th Cir. 1990). In light of the numerous factual and analytical errors in the ALJ's opinion, however, the ALJ's finding that Plaintiff's subjective complaints were not credible was not based on substantial evidence and correct legal standards and cannot stand. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

### 1. The ALJ improperly failed to consider the side effects of Plaintiff's medications

When considering Plaintiff's testimony regarding the side effects of his pain medications, the ALJ stated: "While the claimant reports the existence of severe side effects, he failed to identify any such side effects to his physicians during his examinations." [AR 23]. For purposes of determining disability, it is not necessary—nor even expected—that a claimant report "side effects" *per se* to his physician when the side effects are those expected from the medications prescribed. *See Stewart v. Chater*, 993 F. Supp. 809, 816 (D. Colo. 1998). The PHYSICIANS' DESK REFERENCE lists the following as the most common side effects of Plaintiff's narcotic medications: (1) Fentanyl: somnolence, confusion, weakness, dizziness; (2) Dilaudid: sedation, drowsiness, mental clouding, lethargy, impairment of mental and physical performance; (3) Vicodin: drowsiness, mental clouding, lethargy; (4) Percocet: lightheadedness, dizziness, sedation. *See* PHYSICIANS' DESK REFERENCE (52d ed. 1998) at 1297, 1348, 1366, 914. Contrary to the ALJ's assertion, the record is replete with discussion of these side effects.

Dr. Benecke, for example, reported that Plaintiff informed him that the narcotic pain medications prescribed led to "somnolence," or drowsiness, and "obtundation," or reduced alertness and concentration. [AR 336]. Dr. Benecke recommended additional medications to counteract these reported side effects and recommended a "neuropsychiatric evaluation to assess cognitive function and fine motor skills related to [Plaintiff's] use of opioids." [AR 328, 334,

12

336].  Numerous other places in Plaintiff's medical record note Plaintiff's side effects:

"Cognitive functions such as problem solving and concentration are limited by a combination of

his chronic pain and the narcotic analgesics" [AR 14]; "He now has some difficulty with

memory, dizziness, trouble with his speech and thought process" [AR 142]; subjective complaint

of "slurred speech" [AR 148]; "He came in today stating he could not go back to work because

of the medications" [AR 164]; "He does not want to take the vicodin around the clock for the

pain because it is too sedating" [AR 259]; "Pain meds don't get rid of pain, but take the edge off

and make him drowsy" [AR 289]; "As a result of treatments, including narcotic medications, he

is unable to competently work in any fashion" [AR 315]; "He does still sound a bit slow in his

speech" [AR 316].  Plaintiff's side effects were also noted in Mr. Rauer's report: "Mr. Kirby's

accounting of his medical history was rather disjointed and difficult to follow. . . . I suspect his

narcotic ingestion is the cause of his communication problems."  [AR 112].

It is clear from the record that the ALJ failed to consider the factors laid out in 20 C.F.R.

§ 404.1929(c)(3) and SSR 96-7p.  Rather than consider the alleged effects of Plaintiff's

medications, the ALJ simply dismissed Plaintiff's complaints as lacking credibility.  Even if the

ALJ found incredible Plaintiff's numerous complaints to his treating physicians regarding the

side effects of his medications—a finding the ALJ never actually made in light of his erroneous

finding that Plaintiff "failed to identify any such side effects to his physicians during his

examinations"—it was error for the ALJ to fail to consider the likely side effects of Plaintiff's

medications, as laid out in the PHYSICIANS' DESK REFERENCE.  *See, e.g.*, *Porch v. Chater*, 115

F.3d 567, 572 (8th Cir. 1997) (holding it was error to discount as incredible the claimant's

statements regarding side effects when such side effects were consistent with the expected side

effects described in the PHYSICIANS' DESK REFERENCE); *Felisky v. Bowen*, 35 F.3d 1027, 1040

(6th Cir. 1994) (same); *Stewart v. Chater*, 993 F. Supp. 809, 816 (D. Colo. 1998) (same).  On

remand, the ALJ must consider the effects of Plaintiff's medications on his residual functional

capacity.

### 2. The ALJ improperly relied on the presence of Waddell's signs

The ALJ also noted Plaintiff had positive Waddell's signs.  [AR 23].  Although the use of

Waddell's signs in making a disability determination has not been established in the Tenth

Circuit, the law from other courts is instructive.  Every federal court considering the issue

appears to have held that, in order to be relevant, at least three of the five Waddell's signs must

be present.  *See*, *e.g.*, *Whitley v. Hartford Life & Accident Ins. Co.*, 262 F. App'x 546, 548–49

(4th Cir. 2008); *Wick v. Barnhart*, 173 F. App'x 597, 598 (9th Cir. 2006); *Reinertson v.*

*Barnhart*, 127 F. App'x 285, 289 (9th Cir. 2005); *Hilmes v. Barnhart*, 118 F. App'x 56, 58, 61

(7th Cir. 2004); *Kershner v. Massanari*, 16 F. App'x 606, 609–10 (9th Cir. 2001); *DeBlois v.*

*Astrue*, No. 07-11685-DPW, 2008 WL 2484836, at *1 (D. Mass. June 13, 2008); *Aneweer v.*

*Barnhart*, No. C05-2062, 2006 WL 4079118, at *13 (N.D. Iowa Sept. 16, 2006); *Bazile v. Apfel*,

113 F. Supp. 2d 181, 187 (D. Mass. 2000).  An ALJ ruling based upon a finding of two or fewer

Waddell's signs is not supported by substantial evidence.  *See Reinertson*, 127 F. App'x at 289.

Likewise, an ALJ ruling based on medical evidence that does not indicate how many positive

Waddell's signs a claimant demonstrates is not supported by substantial evidence.  *See Wick*, 173

F. App'x at 598–99.

A review of the medical records shows the Waddell's sign notation to be an isolated

incident in Plaintiff's treatment history.  The positive Waddell's signs were noted only in the

14

February 1, 2005, transcription and were not noted again in the record. [AR 251]. The Waddell's signs notation was made by a physician at the Concerta medical clinic, the same medical clinic that continued to treat Plaintiff's complaints of pain seriously—as shown by the numerous referrals to specialists, extensive diagnostic tests performed, strong narcotic pain medications prescribed, and recommendation of a wheeled walker—and informed Plaintiff in July 2005 that he would never be free of pain. [AR 151–288, 164].

In the words of Waddell himself, "Isolated positive tests are ignored." *See Reinerston*, *supra*, 127 F. App'x at 289 (citing Gordon Waddell *et al.*, *Nonorganic Physical Signs in Low-Back Pain*, 5 SPINE 117, 118 (Mar.–Apr. 1980)). Moreover, the record does not indicate how may of the five Waddell's signs showed positive other that the Waddell's distraction test. [AR 251]. On remand, if the ALJ determines the medical record regarding Plaintiff's Waddell's signs is ambiguous or conflicting or otherwise inadequate to determine Plaintiff's disability—keeping in mind that an ALJ "is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability"—the ALJ should contact Plaintiff's treating physicians for additional information, as required by 20 C.F.R. § 404.1512. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083, 1084 (10th Cir. 2004).

### 3. *The ALJ's opinion relied on other inaccurate statements of the record*

The ALJ also stated, referring to Dr. Miller: "Despite the minimal treatment offered to the claimant and the minimal objective abnormalities on physical examination, the claimant indicated to his physician that he wanted a power scooter. While this physician was not too excited about the idea, he eventually recommended it to assist the claimant in getting out more. However, it was recommended that the claimant ambulate as much as possible." [AR 23].

There is no evidence in the record that it was ever "recommended that the claimant ambulate as much as possible." Dr. Miller noted that the use of a scooter would be helpful for six to nine months "and hopefully in the long run, his pain can be managed such that he would not need the scooter." [AR 319]. Likewise, the records from Dr. Benecke [AR 328–37], who Dr. Miller referred Plaintiff to for pain treatment, do not suggest "it was recommended that the claimant ambulate as much as possible." [AR 23]. Quite the opposite, Dr. Benecke relegated Plaintiff to "minimal ambulation for any distance." [AR 332]. Dr. Benecke in fact noted that he did not anticipate Plaintiff engaging in even sedentary activity for an extended period of time. [AR 328].

The ALJ also stated: "The claimant has been non-compliant with recommended treatment, including physical therapy." [AR 23]. This is an inaccurate statement of the record before the ALJ. Although the record shows Plaintiff was non-compliant on February 1, 2005, [AR 251] later entries in the record show Plaintiff "completed several sessions of pool therapy that he believes worsened his condition" [AR 178] and "several sessions of land-based therapy, which has not been beneficial" [AR 185]. There is no reference in the record to Plaintiff's noncompliance after the February 1, 2005, entry. The ALJ also relied on the February 1, 2005, entry—an entry made at the very beginning of Plaintiff's medical history—when he found "Patient has not been working because he chose not to work." [AR 23]. The ALJ did not take into consideration the numerous instances of Plaintiff's medical providers taking him off work and finding him unable to work after that February 1, 2005, date. On remand, the ALJ must consider Plaintiff's ability to work in light of the whole record, not the "isolated bits of evidence culled to support a specific conclusion" relied upon here. *See Stewart*, *supra*, 993 F. Supp. at

816.

*4. The ALJ did not apply the factors required under SSR 96-7p*

In addition to ignoring the SSR96-7p factors when considering Plaintiff's complaints of side effects, the ALJ's opinion does not mention many of the factors required under SSR 96-7p when making a credibility determination regarding a claimant's subjective complaints of pain in general. For example, the ALJ did not take into account that Plaintiff has persistently attempted to obtain relief of his pain and other symptoms for several years, has tried a wide variety of different therapies, has expressed his complaints and concerns to his physicians with great frequency, has seen numerous specialists, has undergone extensive medical tests, is very limited in his daily activities, and has been diagnosed as being at maximum medical recovery with no chance of being free of pain. The ALJ likewise did not consider the important SSR 96-7p evidence showing that Plaintiff's subjective complaints were observed by his physicians numerous times. On remand, the ALJ must consider and specifically address each of the factors laid out in SSR 96-7p and 20 C.F.R. § 404.1529. *See Hamby*, *supra*, 260 F. App'x at 113.

**V.  WHETHER THE ALJ IMPROPERLY REJECTED THE OPINIONS OF DRS. BENECKE AND MILLER**

Plaintiff next contends the ALJ failed to apply correct legal standards in evaluating the opinions of Plaintiff's treating physicians, Drs. Benecke and Miller. He contends the ALJ failed to properly weigh their opinions and to provide specific, legitimate reasons for rejecting them. I agree.

A.  Factors the ALJ must consider when weighing the opinion of a treating physician

The weight given a treating physician's opinion is determined using a two step inquiry.

First, the ALJ must determine whether to give the treating physician's opinion controlling weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Second, if the ALJ determines the treating physician's opinion is not entitled to controlling weight, the ALJ must then determine how much weight to give the opinion by applying the six factors provided in 20 C.F.R. §§ 404.1527 and 416.927. *See Watkins*, 350 F.3d at 1300. Unless good cause is shown to the contrary, a treating physician's opinion should be given substantial weight. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

The first step of the treating-physician inquiry includes a sequential analysis of two factors. *Watkins*, *supra*, 350 F.3d at 1300; 20 C.F.R. § 404.1527(d)(2). Applying the first factor, the ALJ must determine if the treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. *Watkins*, 350 F.3d at 1300. If the answer to this question is "yes," the ALJ applies the second factor and must determine if the opinion is consistent with other substantial evidence on the record. *Id.* If the answer to this question is also "yes," the opinion "must be given controlling weight; *i.e.*, it must be adopted." *See* Soc. Sec. Ruling 96-2p, 1996 WL 374188 at *1 ("SSR 96-2p").

If the answer to either question is "no," the ALJ must proceed to the second step. A treating physician's medical opinion is entitled to deference and must be weighed using the six factors provided in 20 C.F.R. § 404.1527 and 416.927. *Watkins*, *supra*, 350 F.3d at 1300. These factors are: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether

or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301 (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). Social Security Agency rules make clear that an ALJ must articulate his reasoning with specific and legitimate findings at each step of the inquiry so that a subsequent reviewing court can determine the weight accorded to each opinion and the reasons for that weight. *Id.* (citing SSR 96-2p, 1996 WL 374188, at *5). A reviewing court will not presume the ALJ applied the correct legal standards absent this analysis. *Id.*

### B.  The ALJ did not properly apply the two step inquiry

The ALJ summarily rejected the opinion of Dr. Benecke, Plaintiff's pain-management physician, stating Dr. Benecke's "opinion that the claimant would not be able to sustain work for an extended period of time appears to be based largely on the claimant's subjective complaints of poor sustainability, and is not directly related to any objective findings."  [AR 24].  The ALJ likewise rejected the opinions of Dr. Miller, Plaintiff's primary care physician, as "likely based largely on the claimant's reports, as opposed to objective evidence."  [AR 24–25].

The ALJ properly found, at step one, that the opinions of Dr. Benecke did not include any test results or descriptions of tests and were therefore unsupported by medically acceptable clinical and laboratory diagnostic techniques. *See Watkins*, *supra*, 350 F.3d at 1300. Thus, it was appropriate to proceed to the second step. The ALJ did not, however, undertake the six-part *Watkins* analysis. On remand, the ALJ must apply the six-part *Watkins* test. If the ALJ chooses to reject the opinions of Dr. Benecke, he must demonstrate good cause for his rejection, setting forth specific and legitimate reasons for doing so in light of the six *Watkins* factors. *See*

*Watkins*, *supra*, 350 F.3d at 1300; *Washington*, *supra*, 37 F.3d at 1440; *Byron*, *supra*, 742 F.2d at 1235.

As to Dr. Miller, however, the records from Dr. Miller refer to at least two MRI tests. [AR 315, 326]. The ALJ appeared to find inconsistency between Dr. Miller's opinion and the recommended treatment and testing provided, as well as with the results of the diagnostic tests performed. [AR 24]. In essence, the ALJ determined that the medical record did not support Dr. Miller's analysis. Such a conclusion was not based on application of the proper legal standards.

Before making a finding of inconsistency, an ALJ must first undertake an inquiry into the clinical signs, laboratory findings, and medical bases used by the treating physicians. *See* SSR 96-2p, 1996 WL 374188, at *3. "Because the evidence is in medical, not lay, terms and information about these issues may be implied rather than stated," the ALJ may not substitute his own speculation or lay opinion, but must undertake a medically-based inquiry into "what the clinical signs and laboratory findings signify." SSR 96-2p, 1996 WL 374188, at *3; *see Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004); *Shepherd v. Apfel*, 184 F.3d 1196, 1202 (10th Cir. 1999).

Here, the ALJ determined that Dr. Miller's opinion on Plaintiff's disability—an opinion Dr. Miller specifically based on a review of Plaintiff's MRIs and other treatment records [AR 315]—was medically incorrect. The ALJ, however, did not take testimony from any medical experts at the hearing, nor did the record contain any expert evidence showing Dr. Miller's conclusions were inaccurate. Thus, I am left to conclude the ALJ independently reached his conclusion based on speculation and his own lay opinion. This is not allowed. *See Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987) (holding that an ALJ "can not interpose his own

'medical expertise' over that of a physician, especially when that physician is the regular treating doctor for the disability applicant").

On remand, if the ALJ determines the medical record—including the January 2007 letter submitted to the appeals counsel—is ambiguous or conflicting or otherwise inadequate to determine Plaintiff's disability—keeping in mind that an ALJ "is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability"—the ALJ should contact Plaintiff's treating physicians for additional information, as required by 20 C.F.R. § 404.1512. *See Robinson*, *supra*, 366 F.3d at 1083, 1084. Further, should the ALJ determine that the opinions of Dr. Miller should not be given controlling weight, the ALJ must then determine the appropriate weight in light of the six *Watkins* factors. *See Watkins*, *supra*, 350 F.3d at 1300.

## V. CONCLUSION

Accordingly, I ORDER that the December 6, 2006, administrative decision in this matter is REVERSED and REMANDED to the Commissioner with directions to remand to the Administrative Law Judge for proceedings consistent with this opinion.


Dated: June __27__, 2008.

                                        BY THE COURT:


                                        ___s/Lewis T. Babcock_____
                                        Lewis T. Babcock, Judge